IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**BURTON SAMUEL COMENSKY**,          )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )     2:17cv1154
                                     )     **Electronic Filing**
**COMMONWEALTH OF**                  )
**PENNSYLVANIA, PENNSYLVANIA**       )
**SUPREME COURT, DUQUESNE**          )
**CITY**, **DUQUESNE SCHOOL**, and   )
**CHRISTOPHER E. VINCENT**,          )
                                     )
                    Defendants.      )


## OPINION


Burton Samuel Comensky ("plaintiff") commenced this action by filing a motion to

proceed *in forma pauperis* and attaching to it a "complaint" seeking redress for losses sustained

from the judicial sale of real property that previously was owned by plaintiff.  The sale of the

real estate, located at 32 South Sixth Street in the City of Duquesne, occurred pursuant to the

Municipal Claims and Tax Liens Act, 53 P.S. §§ 7101-7505, and came about as the result of

plaintiff's non-payment of city and school taxes.  Plaintiff's complaint as amended names as

defendants the Commonwealth Court of Pennsylvania, the City of Duquesne, the Duquesne City

School District, and Attorney Christopher Vincent (the attorney who represented the City of

Duquesne and the Duquesne City School District ("the municipal defendants" or "the taxing

authorities") in the underlying state proceedings).  See Amendment to Complaint (Doc. No. 27)

at 2-3.  Plaintiff's amended complaint purports to raise claims for violation of plaintiff's rights

under the Fifth and Fourteenth Amendments to the United States Constitution and the Fair Debt

Collection Practices Act.  Presently before the court are motions to dismiss by Duquesne City

School District, the Commonwealth Court of Pennsylvania (through a filing by the Supreme

Court of Pennsylvania) and Attorney Vincent. For the reasons set forth below, the motions will be granted and the action will be dismissed with prejudice as to all parties.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura

Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law,

3

irrespective of whether a *pro se* litigant has mentioned it by name." <u>Higgins</u>, 293 F.3d at 688 (quoting <u>Holley v. Dept. of Veterans Affairs</u>, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. <u>McNeil</u>, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning. <u>Krantz v. Prudential Investments Fund Management</u>, 305 F.3d 140, 142 (3d Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." <u>Id.</u> at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after <u>Twombly</u>.

Plaintiff's efforts to derail the municipal defendants' divestment of plaintiff's interest in the real property based on his failure to pay City and School District taxes began long ago. In 2007, the municipal defendants commenced a proceeding in the Court of Common Pleas of Allegheny County to reduce tax liens for delinquent taxes from the years 1990 and 1995-2006 to a judgment. They did so through a Writ of *Scire Facias* proceeding.[1] By at least January of

---

[1] Standard Pennsylvania Practice describes *scire facias* as follows:

> A writ of *scire facias* is a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and which requires the defendant to appear

2008 plaintiff actively began to challenge the initiation of the proceeding based on purported

improper service.  He thereafter filed numerous submissions attacking the *in rem* proceeding.

All of these submissions were considered and resolved against plaintiff by the Court of Common

Pleas.  Following a hearing at which plaintiff appeared and challenged the defendants' efforts, the

trial court granted the municipal defendants' motion for judgement and entered a judgment on

December 18, 2013, in favor of the taxing authorities in the amount of $28,003.15, plus

penalties, interest and costs to accrue going forward.  The order indicated its entry was

"contested."  Plaintiff did not file an appeal from this adverse judgment.  <u>Duquesne City</u>, *supra*,

at *1-2.

   On February 20, 2014, the taxing authorities moved for a writ of execution.  Plaintiff

filed numerous submissions attacking this motion, including a motion to strike and/or open

judgment.  He later filed an amended motion seeking the same relief and moved to continue the

sheriff's sale.  He then filed a motion to continue the sheriff's sale which was denied and the

property was offered for sale for upset price on September 8, 2015.  No bids were received.  <u>Id.</u>

at *2.

   After the unsuccessful effort through sheriff's sale, the taxing authorities filed a "petition

for Rule to Show Cause Why Property Should Not be Sold Pursuant to Section 31.1 of the Tax

Liens Act, 53 P.S. § 7282."  A Rule was issued and the sheriff posted it on the subject property.

---

and show cause why the plaintiff should not be permitted to take some step, usually to
have advantage of a public record. The object of the writ of *scire facias* is ordinarily to
ascertain the sum due on a lien of record and to give the defendant an opportunity to show
cause why the plaintiff should not have execution. The writ of *scire facias* serves the dual
purpose of a summons and a complaint, and a writ of *scire facias* is personal process, but
the detailed requirements of a pleading are not applied to the writ of *scire facias*.

<u>Duquesne City v. Comensky</u>, 2017 WL 429484, *1, n.1 (Pa. Commw. Ct., Feb. 1, 2017).

Notice of the Rule was mailed to plaintiff on October 27, 2015. And a copy of the Rule was hand served on plaintiff by Attorney Vincent at the hearing wherein the December 10, 2015, hearing date was set for argument on the Rule. Plaintiff appeared at the December 10, 2015, hearing and again moved to continue the sale of the property. Over plaintiff's objections an order was entered permitting the sale to move forward. The property was sold on January 4, 2016. Id. at *2-3.

Plaintiff moved to set the sale aside and/or to open judgment. The motion was denied on February 4, 2016. Plaintiff asked for reargument a few days later and filed a brief in support of his post-sale motion to set aside or reopen. On March 4, 2016, the trial court denied plaintiff's motion and reconfirmed the January 4, 2016, sale as final.

Throughout the above-recounted saga, plaintiff 1) argued that he was denied due process of law because of improper service, 2) challenged the validity of the liens, 3) maintained an indispensable party had not been joined, and 4) asserted that the pleadings had not been verified. Each of these contentions was considered by the Common Pleas Court one or more times and resolved against plaintiff. The Commonwealth Court considered each of them on appeal. It concluded that as to the contentions concerning the validity and amount of the liens, the failure to join a necessary party and the failure to verify the pleadings, these "arguments were previously litigated and not timely appealed; therefore, the trial court's 2013 judgment in favor of Taxing Authorities and against Appellant is final and binding." Duquesne City, supra, at *3.

As to the issue of due process, the Commonwealth Court held that while the service of the Rule may not have been "by the letter of the law," plaintiff "had more than ample opportunity to be heard over the course of the nine years of litigation," which included "the December 10, 2015 hearing on Taxing Authorities' Petition." Id. at *6. The Court analogized the situation "to City of Philadelphia v. Robinson, 123 A.3d 791, 796 (Pa. Cmwlth. 2015), wherein [it] concluded

6

service was proper, but even if it was not, the property owner appeared at the hearing, so it was presumed he received notice and was not prejudiced by the form of service." Id. at *5 (citing in further support City of Philadelphia v. F.A. Realty Investors Corp., 129 A.3d 1279, 1283 (Pa. Cmwlth. 2015) (same)). It reasoned that such a disposition was "consistent with the principle that the general appearance by a defendant is a waiver of defects in service." Id. (citing City of Phila. v. Schofield, 31 A. 119, 120 (Pa. 1895)). Consequently, because plaintiff "had notice and availed himself of the opportunity to appear and voice his objections to the proceeding," he had "failed to establish that his due process rights were violated [and] also [was] barred from attempting to relitigate the other issues he raised on appeal under the doctrine of res judicata." Id. at *6. The judgment and final order authorizing the sale were therefore affirmed. Id.

It is against this backdrop that plaintiff seeks to pursue his due process and debt collection claims. He seeks reversal of the Commonwealth Court's disposition; money damages against Duquesne City, suspension of Attorney Vincent and an injunction to stay the state court action. Amendment to Complaint (Doc. No. 27) at 6. He also requests an emergency injunction barring the demolition of his prior residence and the confiscation of the personal property therein. Emergency Injunction (Doc. No. 28) at 4. It appears that plaintiff seeks to utilize the federal jurisdiction afforded by the Civil Rights Act of 1864, 42 U.S.C. § 1983, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, to support subject matter jurisdiction in this court and to pursue his theories of recovery. Amendment to Complaint at 4.

The causes of action plaintiff advances and the relief he seeks are precluded for a myriad of reasons. First, any claim by plaintiff against the Court of Common Pleas of Allegheny County and the Commonwealth Court is barred by sovereign immunity.

Federal suits against the state are barred by the Eleventh Amendment.[2] Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits against the state regardless of the relief sought. In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the 'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought.").

Suits against a state agency or a state department are considered to be suits against a state which are barred by the Eleventh Amendment. In re Kish, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985)); accord Hafer v. Melo, 502 U.S. 21, 25 (1991); Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 ("the Eleventh Amendment applies to suits against subunits of the State") (citing Pennhurst, 465 U.S. at 100)). And suits against state officials for acts taken in their official capacity must be treated as suits against the state. Hafer, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities." Haybarger, 551 F.3d at 198 (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005) and Pa. Const. art. V, § 1)). It likewise is settled that "Pennsylvania's judicial districts . . . are entitled to Eleventh Amendment immunity." Id.

---

[2] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997).

The Allegheny County Court of Common Pleas is a subunit of the Commonwealth's unified judicial system. <u>See</u> 42 Pa.C.S.A.§ 911 *et seq*. The Commonwealth Court is a subunit of the Commonwealth's unified judicial system. <u>See</u> 42 Pa.C.S.A.§ 561 *et seq*. Thus, the Allegheny County Court of Common Pleas and the Commonwealth Court are state entities. Immunity attaches to the actions of these courts pursuant to the Eleventh Amendment. Accordingly, plaintiff's claims against these state entities must be dismissed. <u>See</u> <u>Bryant v. Cherna</u>, 520 F. App'x 55, 57 (3d Cir. 2013) ("[T]he state courts of Pennsylvania, including their domestic relations sections, are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment. Accordingly, we agree that both the Family Division and the Domestic Relations Section [of Allegheny County] are immune from suit."); <u>accord</u> <u>Chilcott v. Erie County Domestic Relations</u>, 283 Fed. Appx. 8, 10 (3d Cir. 2008) ("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens.").

Second, plaintiff's claims against all defendants are barred by the <u>Rooker-Feldman</u> doctrine to the extent they seek review and/or reversal of the state court decisions resulting in plaintiff's loss of ownership in the subject property. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983) "established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments" where 1) the party seeking relief complains of injuries caused by a state-court judgment(s) rendered before the district court proceedings were commenced and 2) the party invites the district court to review and reject those judgments. <u>Great Western Mining & Mineral Co. v. Fox Rothschild, LLP</u>, 615 F.3d 159, 164 (3d Cir. 2010) (citing <u>Exxon Mobil</u>

9

Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). In contrast, the doctrine does not bar claims that present injuries independently produced by a third-party, even if the lawsuit presents a claim against a party to the state court case and calls into question a conclusion reached in the state court proceeding. Id. at 167-68.

There are four requirements that must be met before the Rooker–Feldman doctrine applies. They are: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Id. at 166 (citing Exxon Mobil, 544 U.S. at 284). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Id. at 166.

Each of the above factors are satisfied here. Plaintiff lost in state court. He lost in the Writ of *Scire Facias* proceeding and in the writ to execute on judgment proceeding. He lost in both of these proceedings in the Court of Common Pleas of Allegheny County. He lost on appeal in the Commonwealth Court. Thus, the first factor is satisfied.

The second element is best understood as an inquiry into the source of a plaintiff's injury. Id. "The critical task [in conducting this inquiry is] to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" Id. at 167 (quoting Hoblock v. Albany County Board of Elections, 422 F.3d 77, 88 (2d Cir. 2005)). Although not dispositive, examining "the timing of the injury" is a useful guidepost in undertaking this inquiry, and it is helpful to ask "whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." Id. (citing

<u>McKithen v. Brown</u>, 481 F.3d 89, 98 (2d Cir. 2007) and <u>Turner v. Crawford Square Apartments III, L.P.</u>, 449 F.3d 542, 547 (3d Cir. 2006)).

Here, plaintiff is complaining of injuries directly produced by the state court proceedings. The initial liens were generated by the municipal defendants' efforts to collect back taxes. Their efforts to reduce these liens to judgment were undertaken in a proceeding authorized by state law. The municipal defendants' efforts to reduce the liens gave rise to plaintiff's complaints about the submissions and pleadings being properly verified. After several years of opposition by plaintiff, these defendants obtained a judgment for back-due taxes plus accruing penalties and costs.

The notice and opportunities plaintiff received during the *Scire Facias* Sur Tax Lien proceeding and the execution of judgment proceeding were a direct result of the state court proceedings. The notice in each was initiated pursuant to the applicable state law and effectuated by the Allegheny County Sheriff's Office. Plaintiff challenged these instances and forms of notice at every turn. It is clear that plaintiff challenged the service of the writ *scire facias* and the notice he received in the execution of judgment proceeding as falling short under state law, but the rulings that upheld the notices in each instance and thus gave them legal effect are a direct result of the state court proceedings and the resulting judgments. All the actual detriment plaintiff experienced from the notice utilized in the proceedings emanates directly from the Court of Common Pleas judgments as affirmed by the Commonwealth Court. Thus, plaintiff complains of an injury produced by the judgment orders upheld by the state courts.

Each of the state court judgments were rendered before the instant action was filed. Judgment was entered in favor of the municipal defendants as taxing authorities in the *Scire Facias* Sur Tax Lien proceeding on December 13, 2013. A final judgment was entered on the proceeding pursuant to the Tax Liens Act on January 4, 2016. The Commonwealth Court

affirmed the order of final sale by opinion and order issued on February 1, 2017. <u>Duquesne City</u>, *supra*, at \*6. This federal lawsuit was filed on September 1, 2017. Thus, the third factor giving rise to the application of the <u>Rooker-Feldman</u> doctrine is satisfied.

Finally, it is abundantly clear that plaintiff is inviting this court to review and reject the state-court decisions and judgments. One need only examine the theories of liability advanced and the forms of relief sought here and contrast them with the parties' respective litigation positions in the state court proceedings and the resulting state court judgments to confirm that plaintiff seeks a review, rejection and undoing of the state court rulings.

It follows that each of the factors for application of the <u>Rooker-Feldman</u> doctrine are satisfied. Consequently, this court is barred from further consideration of plaintiff's claims against Duquesne City and the Duquesne City School District.

But even assuming for the sake of argument that this court is not barred from proceeding on plaintiff's claims against the municipal defendants under the <u>Rooker-Feldman</u> doctrine, the claims against these defendants still must be dismissed. Where the state court proceeding have become final, as they have here, a "federal court must 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" <u>Great Western Mining</u>, 615 F.3d at 170 (quoting <u>Parsons Steel, Inc. v. First Ala. Bank</u>, 474 U.S. 518, 523 (1986) (further citation omitted)). Application of the principles of preclusion law forecloses plaintiff's current foray.

Under the doctrine of *res judicata*, a final judgment on the merits of a claim rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as between them it creates an absolute bar to a subsequent action involving the same cause of action. <u>In re Weisbrod & Hess Corp.</u>, 129 F.2d 114 (3d Cir. 1942). Application of the doctrine involves a three step inquiry: has "there [] been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause

12

of action." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991). If so, the

subsequent suit is barred. Id.

The "purpose of [the res judicata] doctrine is to relieve the parties of the cost and

vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and

encourage reliance on adjudications." Turner v. Crawford Square Apartments III, L.P., 449 F.3d

542, 551 (3d Cir. 2006). In order to effectuate this purpose, the doctrine not only bars re-

litigation in a second suit of what actually was litigated in the first, but also precludes the

advancement of claims and issues that could have been litigated in the first suit. See, e.g., Smith

v. Morgan, 75 F. App'x. 505, 506 (6th Cir. 2003) ("Under claim preclusion, a final judgment on

the merits bars any and all claims by the parties or their privies based on the same cause of

action, as to every matter actually litigated as well as every theory of recovery that could have

been presented."); L–Tec Electronics Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87–88 (2d

Cir. 1999) (per curiam ) ("The doctrine of res judicata, or claim preclusion, prevents a plaintiff

from relitigating claims that were or could have been raised in a prior action against the same

defendant where that action has reached a final judgment on the merits.").

In ascertaining the scope of the doctrine, our court of appeals has opined that the term

"'cause of action' cannot be precisely defined, nor can a simple test be cited for use in

determining what constitutes a cause of action for res judicata purposes." United States v.

Athlone, 746 F.2d 977, 984 (3d Cir. 1984) (quoting Donegal Steel Foundry Co. v. Accurate

Prods. Co., 516 F.2d 583, 588 n. 10 (3d Cir. 1975)). Instead, the focus centers on the "essential

similarity [or lack thereof] of the underlying events giving rise to the various legal claims."

Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982) (in banc), cert. denied,

460 U.S. 1014 (1983). This inquiry is "in keeping with '[the established] trend . . . in the

direction of requiring that a plaintiff present in one suit all the claims for relief that he may have

arising out of the same transaction or occurrence.'" <u>Athlone</u>, 746 F.2d at 984 (quoting 1B J.

Moore & J. Wicker, MOORE'S FEDERAL PRACTICE ¶ 0.410[1], at 359 (2d ed. 1983)).

Here, the underlying events giving rise to this federal lawsuit are/were the exact same

events giving rise to the state court case between plaintiff and the municipal defendants. In

addition, the theories and alleged violations of rights are substantially the same. Among other

things, plaintiff repeatedly contended in the state case that "he was denied due process of law

because of improper service and also [] challenged the validity of the liens, maintained that an

indispensable party was not joined, and argued that pleadings were not properly verified."

<u>Duquesne City</u>, *supra*, at *1. The issue of being provided sufficient service of process was

considered thoroughly and it was held that plaintiff was not prejudiced by the form of notice he

did receive; the remaining issues were resolved against plaintiff by the trial court's entry of a

judgment against plaintiff. As the Commonwealth Court concluded:

> As the trial court stated in its 1925(a) opinion, Appellant 'has had more than ample opportunity to be heard' over the course of the nine years of litigation. (Trial Ct. Op. at 2.) This includes the December 10, 2015 hearing on Taxing Authorities' Petition. Although service of the Rule may not have been by the letter of the law, based upon the unique facts of this case, it is apparent that Appellant had notice and availed himself of the opportunity to appear and voice his objections to the proceeding. Therefore, Appellant has failed to establish that his due process rights were violated. He is also barred from attempting to relitigate the other issues he raised on appeal under the doctrine of res judicata.

<u>Id.</u> at *6.

Plaintiff's claims in this suit arise from the same setting and seek forms of relief that were

at issue or subsumed in the state court case. Plaintiff's attempt to revisit the issues of notice, the

loss of property occasioned by the municipal defendants obtaining the right to sell plaintiff's

prior residence and the enforcement of the Commonwealth Court's disposition are barred as

against the municipal defendants by the doctrine of res judicata. And this is so regardless of

whether the claims are cast as ones for violation of due process or an unlawful debt collection

practice and/or brought to secure money damages or injunctive relief. All such claims against these defendants could have been raised in the state court case during its nine-year history. They are thus barred.

Plaintiff has failed to plead sufficient facts to make a plausible showing that Attorney Vincent acted under color of state law. To be sure, the Supreme Court has recognized that private citizens can engage in conduct that will satisfy the state action element for § 1983 liability. In this regard the Court has observed that the criteria for determining the presence of state action lacks rigid simplicity. Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001). Over the years the Court has established a number of approaches to answer the general question of whether there is a sufficiently "close nexus between the State and the challenged action [so] that seemingly private behavior may be fairly treated as that of the State itself." Id. (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974)). It has identified a host of factors that can "bear on the fairness of such an attribution," such as when (1) the challenged activity results from the state's exercise of coercive power, (2) the state provides significant encouragement, either overt or covert, or (3) a private party becomes a willful participant in joint activity. Id. at 296 (collecting cases in support).

In Crissman v. Dover Downs Entertainment Inc., the Third Circuit followed Brentwood's approach to evaluating allegations of state action by private parties. Crissman, 289 F.3d 231, 239 (3d Cir. 2002). Regardless of whether the approach is treated as "tests" or "facts," "Brentwood directs courts to focus on the fact-intensive nature of the state action inquiry, mindful of its central purpose: to assure that constitutional standards are invoked 'when it can be

said that the State is *responsible* for the specific conduct of which the plaintiff complains.'"[3]  Id.

(citing Brentwood, 531 U.S. at 295 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)

(emphasis in original)).   In other words, the basic question is whether the challenged act can be

"fairly attributed to the state."  Crissman, 289 F.3d at 231 (citing American Mfrs. Mut. Ins. Co.

v. Sullivan, 526 U.S. 40, 50 (1999)).

Brentwood highlighted Lugar as an example of when private party conduct may be fairly

attributed to the state under the theory of joint activity.  Brentwood, 531 U.S. at 295.  Lugar set

forth two central principles to guide the fact-intensive inquiry in this area: "[f]irst, the

deprivation must be caused by the exercise of some right or privilege created by the State or by a

rule of conduct imposed by the State or by a person for whom the State is responsible" and

"[s]econd, the party charged with the deprivation must be a person who may fairly be said to be a

state actor.  This may be because he is a state official, because he has acted together with or has

obtained significant aid from state officials, or because his conduct is otherwise chargeable to the

State."  Lugar, 457 U.S. at 937.

Conspiratorial conduct can satisfy the two principles highlighted in Lugar.  Lugar, 457

U.S. at 931.  In examining its prior precedent in this area the Court observed:

> As is clear from the discussion in Part II, we have consistently held that a
> private party's joint participation with state officials in the seizure of disputed
> property is sufficient to characterize that party as a "state actor" for purposes of
> the Fourteenth Amendment. The rule in these cases is the same as that articulated
> in Adickes v. S. H. Kress & Co., *supra*, 398 U.S., at 152, 90 S. Ct., at 1605–1606,
> in the context of an equal protection deprivation:

---

[3] The Supreme Court pointed out in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), that it
has never been clear "[w]hether these different tests are actually different in operation or simply
different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in
[each] situation." Id. at 939; see also Groman, 47 F.3d at 639 n. 16.  Brentwood appears to
embrace the second understanding.  Crissman, 289 F.3d at 239 n. 12.

> "'Private persons, jointly engaged with state officials in the prohibited
> action, are acting "under color" of law for purposes of the statute. To act
> "under color" of law does not require that the accused be an officer of the
> State. It is enough that he is a willful participant in joint activity with the State
> or its agents,'" quoting <u>United States v. Price</u>, 383 U.S., at 794, 86 S. Ct., at
> 1157.

<u>Id.</u> at 941.  In <u>Adickes</u>, the Court recognized that a "private party's joint participation with a state

official in a conspiracy to discriminate would constitute both 'state action essential to show a

direct violation of petitioner's Fourteenth Amendment equal protection rights' and action 'under

color' of law for purposes of [ § 1983]."  <u>Id.</u> (quoting <u>Adickes</u>, 398 U.S. at 152); <u>accord</u> <u>Dennis v.

Sparks</u>, 449 U.S. 24, 27 (1980) ("[a]lthough not an agent of the state, a private party who

willfully participates in a joint conspiracy with state officials to deprive a person of a

constitutional right acts 'under color of state law' for purposes of § 1983.").  In this setting the

first principle may be satisfied by the state official joining with the party to carry out a state

procedure for a constitutionally prohibited reason.  <u>Adikes</u>, 398 U.S. 152 ("Although this is a

lawsuit against a private party, not the State or one of its officials, our cases make clear that

petitioner will have made out a violation of her Fourteenth Amendment rights and will be

entitled to relief under § 1983 if she can prove that a Kress employee, in the course of

employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss

Adickes service in The Kress store, or to cause her subsequent arrest because she was a white

person in the company of Negroes."); <u>accord</u> <u>Dennis</u>, 449 U.S. at 31-32 (allegations that an

official act by a state court judge was the product of a corruption conspiracy involving bribery of

the judge were sufficient to assert action under color of state law on the part of the private

parties); <u>Abbott v. Latshaw</u>, 164 F.3d 141, 198 (3d Cir. 1998) (allegations that ex-wife formed

agreement with state constable to repossess vehicle without affording ex-husband advance notice

and an opportunity to be heard prior to the seizure and effectuated that agreement with aid of constable and local police officer stated § 1983 claim against ex-wife).

Plaintiff contends Attorney Vincent filed false statements in the Commonwealth Court, did not secure to plaintiff any Sheriff returns, filed six separate praecipes for a writ of execution on the real estate, failed to provide plaintiff with proper service of a rule to show cause, failed to correct defects in the calculation of the liens, and permitted the liens to be assigned to others. All of this has deprived plaintiff of his rights to due process and equal protection under the Fourteenth Amendment, impaired plaintiff's right of redemption, deprived plaintiff of fair value in determining what was owed and so forth. See generally Plaintiff's Answer to Defendant Vincent's Motion to Dismiss (Doc. No. 39) at 1-2. Thus, plaintiff has set forth averments that potentially could support an attribution of state action to Attorney Vincent.

It is well settled, however, that a plaintiff cannot establish the existence of actionable joint or conspiratorial conduct through actions undertaken by counsel in an attorney-client relationship. Hefferan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999). Under the "intracorporate conspiracy doctrine" an entity cannot conspire with one who acts as its agent. Id. Thus, as long as the attorney is acting in his or her official capacity and within the scope of representing the client, the attorney enjoys immunity from suit under the Civil Rights Act. Id.; accord N'Jai v. Floyd, 386 Fed. Appx. 141, 144 (3d Cir. 2010) (school districts' attorneys who acted in representative capacity in the plaintiff's civil rights and discrimination cases could not be found "liable under 42 U.S.C. §§ 1983, 1985, or 1986."). Liability may attach in such settings only where the attorney acts solely in a personal capacity and not within the scope of the attorney-client agency. Hefferan, 189 F.3d at 412 ("Along these lines, courts that have followed the doctrine allow an exception when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment.") (citing in support Fraidin v. Weitzman,

611 A.2d 1046, 1077-80 (Md. App. 1992) (no conspiracy when attorneys act within scope of employment unless they act for their "sole personal benefit")). The courts consistently have followed these principles in this jurisdiction. See e.g. Singleton v. Pittsburgh Bd. of Educ., 2012 WL 4063174, * 6-8 & n. 8 (W.D. Pa. August 24, 2012) (Lenihan, Magistrate Judge) (allegations that indicate among other things that an attorney was acting for the benefit of his or her clients and not solely for his or her personal benefit cannot provide the relationship necessary to confer state actor status on the attorney under § 1983) (collecting cases).

Moreover, immunity from § 1983 conspiratorial liability remains even where an attorney acts for "mixed motives" so long as at least one basis for the challenged conduct is within the scope of the agency. Hefferan, 189 F.3d at 413. In other words, the mere fact that the challenged conduct may benefit the attorney does not make it actionable provided it is undertaken within the scope of representation. Id. And this is so even where the conduct violates the canons of ethics. Id. ("The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge" under the Civil Rights Act.). Similarly, "the fact that the attorney appellees may have acted in bad faith or with the illegitimate purpose of abusing process in mind, does not, in itself, bring their actions outside the scope of the attorney-client relationship." General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 314 (3d Cir. 2003).

Plaintiff has failed to allege any factual basis to support a plausible showing that Attorney Vincent acted solely for his own personal benefit. It cannot be disputed that only Duquesne City and Duquesne City School District could 1) tax plaintiff's prior residence, 2) bring a *Scire Facias* Sur Tax Lien proceeding to reduce back taxes to a judgment, and 3) proceed under the Tax Liens Act to sell the real estate in an effort to satisfy the judgment. The municipal defendants had exclusive control over the decision to proceed with the claims and/or defend at each level of

appeal.  Each of the actions by Attorney Vincent that plaintiff has identified clearly were undertaken as part of his representation of the municipal defendants in the course of these state court proceedings.  The facts alleged indicate only that the municipal defendants ultimately exercised their rights as to these client decisions after receiving the advice of counsel.  There is no basis to find or infer that the City/School District's counsel acted outside his representative capacity and solely for his own personal benefit.  Consequently, plaintiff has failed to allege enough factual matter to make a plausible claim that Attorney Vincent acted under color of state law and plaintiff's § 1983 claim against this defendant must therefore be dismissed.

Plaintiff's efforts to find shelter in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), are wide of the mark.  The FDCPA is a remedial statute aimed at eliminating abusive practices by debt collectors. 15 U.S.C. § 1692k; see also Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (providing an overview of the FDCPA's legislative history and general application).  "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  St. Pierre v. Retrieval-Masters Creditors Bureau, Inc., 2018 WL 3733860, *3 (3d Cir. Aug. 7, 2018) (citation omitted).

Plaintiff's factual allegations do not give rise to a plausible showing that supports any of the elements.  First, plaintiff's claims are premised on his status as a disgruntled tax payer, not a consumer of some product or service.  Thus, plaintiff's status is beyond the purview of the FDCPA.  See Pollice v. National Tax Funding, L.P., 225 F.3d 379, 401 (3d Cir. 2000) ("a "debt" is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family or household purposes"); Staub v. Harris, 626 F.2d 275,

279 (3d Cir. 1980) ("we believe the Act does not apply to practices [by a school district, township and county] occurring in the course of [the] collection of taxes.").

Second, none of the defendants can be found to be debt collectors. The FDCPA applies only to "debt collectors," which is defined as any person: (i) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts"; or (ii) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Tepper v. Amos Fin., LLC, 898 F.3d 364, 366 (3d Cir. 2018); 15 U.S.C. § 1692a(6). "Specifically excluded from the definition's reach are, in relevant part, a creditor's officers and employees collecting debts for the creditor, a company collecting debts only for its non-debt-collector sister company, an entity collecting a debt it originated, and one collecting a debt it obtained that was not in default at the time of purchase." Id. (citing 15 U.S.C. § 1692a(6)(A), (B), (F)).

After the Supreme Court's decision in Henson v. Santander Consumer USA Inc., ——— U.S. ——, 137 S. Ct. 1718 (2017), to proceed under the FDCPA a plaintiff must show that the defendant is an entity 1) whose principal purpose of business is the collection of debts or 2) who regularly collects or seeks to collect debts owed or due to another. Tepper, 898 F.3d at 366-68. None of the defendants can be said to be within this statutory definition. The municipal defendants neither have a principal purpose of collecting debts nor regularly collect or seek to collect debts owed or due to another. The record is devoid of any basis to infer or assume that Attorney Vincent limited his practice in such a manner. Thus, facts to support the second element are not present.

Third, the state court proceedings were to satisfy past due tax deficiencies. They were not to collect on a consumer debt.

Finally, as a review of the record here and the state court proceedings make unequivocally clear, there was nothing abusive, deceptive, misleading or unfair about the defendants' undertakings in question. See Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987) (a threshold requirement under the FDCPA is that a prohibited practice - such as abusive, deceptive, or unfair tactics - has been used to collect a consumer debt). This glaring deficiency likewise mandates the dismissal of plaintiff's FDCPA claim.

For the reasons set forth above, plaintiff's claims lack merit and there is not a viable basis for further proceedings in this court. Consequently, defendants' motions to dismiss will be granted and plaintiff's complaint as amended will be dismissed. An appropriate order will follow.[4]

Date: March 26, 2019

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:    Burton Samuel Comensky
       915 Maryland Avenue
       Duquesne, PA 15110
       (*Via First Class Mail*)

       John H. Rushford, Esquire
       Michael Mazzella, Esquire
       Caroline Liebenguth, Esquire
       John W. Smart, Esquire
       (*Via CM/ECF Electronic Mail*)

---

[4] As a general matter, a plaintiff is to be granted leave to amend a claim that has been dismissed when an amendment might be able to cure the deficiencies resulting in the dismissal. Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). This principle does not apply, however, where the record indicates any attempt to do so would be futile. Id. at 236 (citing Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002)). Here, any attempt to pursue yet again the exhausted theories advanced by plaintiff would be futile.